**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-cr-276-CKK** |
| **CLIFFORD MACKRELL,** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Clifford Mackrell ("Mackrell") to 27 months of incarceration, 36 months of supervised release, $2,000 in restitution, and a special assessment of $100. The government's recommended sentence is at the midpoint of the parties' stipulated guidelines incarceration range of 24 to 30 months and confirmed by the U.S. Probation Office.

## I.     INTRODUCTION

The defendant, Clifford Mackrell, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States

Mackrell, an unemployed, 23-year-old man from Wellington, Ohio, travelled with his father and co-defendant, Michael Mackrell ("Michael") from their home to Washington D.C. to attend the "Stop the Steal" rally held on January 6, 2021. Shortly before 2:30 p.m., Mackrell positioned himself on the front line of rioters on the west front of the U.S. Capitol. There, he challenged and assaulted police officers from both the U.S. Capitol Police (USCP) and the D.C. Metropolitan Police Department (MPD) while they tried to protect the U.S. Capitol from the rioters. In addition to contributing to the overall force of the crowd that overwhelmed the officers, Mackrell personally and brutally assaulted officers. Mackrell successfully struck and yanked at an officer's gas mask. Mackrell also assaulted Officer D.H and grabbed at his face, but fortunately did not injure him.[2] Mackrell and his father also helped another rioter push a piece of plywood into a line of officers, moving them off their protective line.

The government recommends that the Court sentence Mackrell to 27 months of

---

Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

[2] In the filed Statement of Offense in this case, there is an error in that the document reads as follows: "[T]he defendant successfully struck and pulled down the officer's gas mask as Officer D.H. was trying to help his fellow officers hold a line against rioters." The government has met and reviewed video with Officer D.H. in advance of sentencing and learned that at this time of this assault, D.H. was wearing a riot shield with a surgical mask underneath. D.H. confirmed that did have and wear a gas mask while he was at the Capitol on January 6, but he had not yet put the gas mask on at the time Mackrell assaulted him. *See* ECF 89 at 4, PSR ¶31.

incarceration for his conviction of violating 18 U.S.C. 111(a). A 27-month sentence reflects the gravity of Mackrell's conduct.

## II.   FACTUAL BACKGROUND

### A.   The January 6, 2021 Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF 89, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.   Mackrell's Role in the January 6, 2021 Attack on the Capitol

Prior to January 6, 2021, Mackrell traveled from his home in Ohio with his father to Washington, D.C. to participate in the former President's "Stop the Steal" rally. After the rally, Mackrell and his father marched to the Capitol. They were outfitted for battle, wearing protective gear, including gas masks, bandanas, heavy gloves and carrying backpacks, to the Capitol as shown in Image 1.



*Image 1 – Mackrell (on left and outlined in red) and his father walking toward the Capitol*

Just before 2:30 p.m., and just after Congress was forced into recess, Mackrell and his father arrived at to the West Front of the Capitol where police officers had installed a row of barricades which demarcated the restricted area the public was not allowed to enter. When they arrived, tear gas and other chemical irritants filled the air, emergency warning systems blared into the crowd, and the line of police officers spread across the West front were under constant attack from the mob. Not a mere bystander observing the chaos, Mackrell chose to join in the fight. Mackrell positioned himself on the front line of rioters on the west front of the U.S. Capitol. During this time, a citizen captured scenes from the riot on video, including the violent and disorderly acts committed by Mackrell, that occurred at the U.S. Capitol on that day.[3]  While

---

[3] This video will be submitted to the Court as Government's Exhibit 1 for sentencing. Video clips come from the website "Political Trans Tribune."

on the front line of rioters, Mackrell engaged with and assaulted USCP and MPD officers who had formed a line protecting the U.S. Capitol from the rioters. Mackrell other rioters pushed back barricades made of interlocking bicycle racks, which caused the officers to abandon their line and retreat closer to the Capitol building to form a new protective line without the use of barricades. While there, between approximately 2:28 p.m. to 2:35 p.m., Mackrell engaged in multiple assaults. This included striking and pushing officers, violently pulling at an officer's gas mask, lunging at Officer D.H.'s face, and using plywood to push against officers who were attempting to protect the Capitol.

     **1.**    **Mackrell's Assault on the Police Line on the Lower West Terrace**

     Mackrell's assaults were captured on video.   *See* Government's Exhibit 1. During the first four minutes of the recording, it shows officers holding a barricaded line in front of an entrance to the U.S. Capitol and a mob of rioters on the other side of the barricades. Approximately four minutes later, the officers' line begins to deteriorate as the rioters break through the barricades. Mackrell contributed to breaking through the officers' line by pushing on officer's riot shield, pushing through a bike rack barricade, and driving officers further back toward the Capitol building as depicted in Images 2- 5.



*Image 2 –Photo of Mackrell (circled in red) pushing a riot shield at the police line on the West front (Source: https://archive.org/download/JdFEGPRrR7fhz9bwi/JdFEGPRrR7fhz9bwi.jpg)*



*Image 3 – Still photo of Mackrell (outlined in red) at the police line on the West front*



*Image 4 - Still shot from Exh. 1 (4:09 timestamp) with Mackrell circled in red*



*Image 5 - Still shot from Exh. 1 (4:18 timestamp) with Mackrell circled in red*

Over the next three to four minutes, officers fell back and formed another line closer to

the Capitol building without barricades. During this time, there was initially some space between

the officers and the mob. Mackrell was part of the mob that narrowed that gap as the officers

formed a new line without barricades as shown in Image 6.

7



*Image 6- Still shot from Exh. 1 (5:12 timestamp) with Mackrell circled in red*

Meanwhile, other rioters grabbed and sprayed officers with chemical substances and tossed the bike-rack barricades and other objects at the officers. About three minutes later, the mob was pressed against the officers who had formed the line of retreat. All the while, Mackrell remained in the front of the mob, pushing up and shoving the officers.

### 2.   Mackrell's Assault on an Unidentified USCP Officer

While at the front of the crowd, Mackrell assaulted a USCP officer by striking the officer with his hands and fists several times. As another rioter sprayed what appeared to be bear spray at the line officers, Mackrell grabbed under the officer's riot shield and helmet in what appeared to be at attempt to remove the officer's gas mask. By doing so, Mackrell could have exposed the officer to the spray. The assault is depicted in Images 7 and 8.



*Image 7 - Still shot from Exh. 1 (8:45 timestamp) with Mackrell circled in red*



*Image 8- Still shot from Exh. 1 (8:49-8:52 timestamp) with Mackrell circled in red*

Another officer then pushed Mackrell in an effort to stop the attack, after which Mackrell retreated from the officers' line. As Mackrell moved back and other rioters encouraged him to "go recover," the videographer who shot Government's Exhibit 1, followed him and asked Mackrell where he was from. Mackrell replied, "Cliff" and that he was from "Ohio." Mackrell then said, "whatever it takes for my country … I'm not done … I'm going back in". (*See* Government's Exhibit 1 for sentencing at approximately 9:19 – 9:57 timestamp.)

       **3.**      **Mackrell's Assault on MPD Officer D.H.**

As alluded to above, among the many unlawful and violent acts Mackrell engaged in on January 6, Mackrell engaged in a particularly brutal assault on MPD Officer D.H. At approximately 2:29 p.m., Mackrell attempted to push Officer D.H. A few seconds later, Mackrell successfully attacked Officer D.H. as D.H. was trying to help his fellow officers hold a line against rioters. Videos of the assault, Government's Exhibits 2 and 3 for sentencing, were captured on open-source videos as well as Officer D.H.'s body worn camera (BWC) as shown in Images 9 and 10.[4]   During the assault on Officer D.H., Mackrell grabbed under D.H.'s riot shield and grabbed at his face and eyes. When Mackrell pushed his fingers near D.H.'s eyes, D.H. can be heard screaming in agony over his BWC. (*See* Exh. 3 at the 14:29:24 - 14:29:26 timestamp.)

---

[4] In March 2023, Officer D.H. Posted Image 10 on his Twitter account in an effort to positively identify his assailant. Officer D.H. wrote, "Looking for help ID'ing this guy. I think (not 100% certain) he's the one who tried to gouge out my eye on the west terrace after the line collapsed. If any sleuths out there recognize him/the outfit, or have a shot of him actually doing it I'll be your best friend." Very soon thereafter, another Twitter user replied and identified Mackrell as Officer D.H.'s assailant.



*Image 9 – Still shot from Exh. 2 (0:30 timestamp) with Mackrell outlined in red*



*Image 10 from Exh. 3- (Source: MPD Officer D.H.'s BWC video)*

4.      **Mackrell's Shoving of a Piece of Plywood Against a Police Line.**

Mackrell a l s o  helped  push a large sheet of plywood into a line of officers, pushing

them off their protective line.  When the plywood fell, Mackrell's father pushed an officer to the

ground. Mackrell then pushed other police  officers on that line, as depicted in Image 11.



*Image 11 - Still shot from Exh. 4 (26:00-26:15 timestamp) with Mackrell circled in red*

***Mackrell's Statements Following January 6***

Prior to his arrest on  these charges, the United States obtained a  search warrant for

Mackrell's Facebook account. A review of the recovered material revealed that Mackrell was

proud of his actions on January 6 and that he and the other rioters "sent [our] message" and that

"the cops got there [sic] ass handed to them." These statements reveal Mackrell's utter lack of

remorse for the events and violent actions in which he partook in at the Capitol that day. Excerpts of messages exchanged with two different friends are shown in Images 11 and 12.

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 00:08:13 UTC
**Body** Did you see the news yet?

**Author** █████████████████████████
**Sent** 2021-01-07 00:08:31 UTC
**Body** No what happen

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 00:09:23 UTC
**Body** Turns out trump supporters have had enough and the police tried to protect the capitol

**Author** █████████████████████████
**Sent** 2021-01-07 00:20:40 UTC
**Body** Did they get in ?

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 00:21:33 UTC
**Body** Some people did but after we had control the majority left because it was just a message to them also there was no gun fire except for one person

**Author** █████████████████████████
**Sent** 2021-01-07 00:23:22 UTC
**Body** I see all the libs are saying we're basically hypocrites Bc of all the "rioting" and shit like do yoh see us burning down whole cities breaking into buildings stealing shit and killing people ? No

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 00:38:11 UTC
**Body** Dude people are saying we are worse and shit. Literally we used nothing but our body's image if all those people had guns???

**Author**  ████████████████████████
**Sent**  2021-01-07 00:45:15 UTC
**Body**  Right it's so stupid.. all of a sudden rioting is so terrible and this and that

**Author**  ████████████████████████
**Sent**  2021-01-07 00:45:22 UTC
**Body**  Can't stand libs

**Author**  Cliff MacKrell (Facebook: 100009515070418)
**Sent**  2021-01-07 00:47:19 UTC
**Body**  Yea but we didn't do anything like what they did we didn't destroy peoples lives for no reason I mean the cops got there ass handed to them but at the same time we also made sure they were ok like we helped them make it inside of the capitol now people like Cici thinks we are the bad guys

**Author**  Cliff MacKrell (Facebook: 100009515070418)
**Sent**  2021-01-07 00:47:54 UTC
**Body**  I mean fucking he'll only one person died and that person was a trump supporter hmmmm▢▢▢▢▢

*Image 12 – Facebook messages exchanged between Mackrell and Friend 1 on January 6, 2021[5]*

In another ominous Facebook post, Mackrell stated that additional violence might occur on "inauguration day" as show in Image 13.

---

[5] Because Facebook messages are recorded in UTC time, which is five hours ahead of EST, these messages actually occurred on the evening of January 6, 2021 and not early on January 7, 2021.



**Author**
**Sent** 2021-01-07 02:23:06 UTC
**Body** You make back home or are you still in dc

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 02:23:16 UTC
**Body** Still In dc

**Author**
**Sent** 2021-01-07 02:23:35 UTC
**Body** You good out there?

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 02:24:29 UTC
**Body** Lol bro my head hurts I got hit with the baton 10-15 times but yea is something on the news?

**Author**
**Sent** 2021-01-07 02:25:59 UTC
**Body** Just that their about to crack down on the protesters still out there. I was just checking on you make sure our people are ok

**Author**

2021-01-07 02:26:29 UTC
**Body** You take care of yourself while out there

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 02:26:57 UTC
**Body** Nah dude people that are still protesting are beating a dead horse we already sent our message no need to keep going until you know Inauguration Day

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 02:27:08 UTC
**Body** Bro my head strong as hell I'm good

**Author**
**Sent** 2021-01-07 02:27:33 UTC
**Body** That good

**Author** Cliff MacKrell (Facebook: 100009515070418)
**Sent** 2021-01-07 02:28:21 UTC
**Body** Y'all better stay safe and keep your head on a swivel

*Image 13- Facebook messages exchanged between Mackrell Friend 2 on January 7, 2021*

### III.     THE CHARGES AND PLEA AGREEMENT

On March 29, 2023, a federal grand jury returned a second superseding indictment charging Mackrell with six counts, including, Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). On, On October 20, 2023, Mackrell was convicted of this offense based on a guilty plea entered pursuant to a plea agreement.

### IV.     STATUTORY PENALTIES

Mackrell now faces sentencing on one count of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1).

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, Mackrell faces up to eight years of imprisonment, a term of supervised release of not more than three years, a fine up to $250,000, $2,000 in restitution, and a mandatory special assessment of $100. PSR ¶ 12.

### V.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

The government agrees with the Presentence Report ("PSR") calculations of the Sentencing Guidelines. According to the PSR, Mackrell's offense level under the Sentencing Guidelines is as follows:

Count Two: 18 U.S.C. § 111(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | +6 |
| | **Total** | **20** |
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | -3 |
| **Total Adjusted Offense Level:** | | **17** |

*See* PSR at ¶50.

The U.S. Probation Office calculated Mackrell's criminal history as category I, which is not disputed. PSR ¶ 53. Accordingly, based on the government's calculation of Mackrell's total adjusted offense level, after acceptance of responsibility, at 17, Mackrell's Guidelines imprisonment range is 24 to 30 months' imprisonment. PSR ¶ 89. Mackrell's plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein. *See* ECF xxx at ¶ 14.

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. Section 4C1.1 does not apply in this case because Mackrell directly "use[d] violence [and made] credible threats of violence." U.S.S.G. § 4C1.1(a)(3). Specifically, Mackrell: (1) helped break through the police line on the West Front by pushing through a barricade and driving officers further back toward the Capitol building; (2) assaulted a USCP officer and pulled on the officer's riot shield and gas mask while doing it; (3) picked up a large piece of plywood and pushed/threw it into a line of officers;

and (4) assaulted MPD Officer D.H. by grabbing at his face and eyes. All of these are independent reasons why Section 4C1.1 does not apply to Mackrell.

The government is aware of several cases in which courts have rejected the application of § 4C1.1 to January 6 defendants who engaged in violence, e.g., *United States v. Gundersen,* 21-cr-137 (RC); *United States v. Baquero*, 21-cr-702 (JEB); *United States v. Fonticoba*, 21-cr-638 (TJK); *United States v. Giberson*, 23-cr-115 (CJN); *United States v. Dillard*, 23-cr-49 (JMC).

## VI.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.   Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Mackrell's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Mackrell was a violent and active participant in that riot. He made his way to the one of the most violent locations that day – the West front at the time of the initial breach of the police line –and actively assaulted officers and joined in helping the mob remove the protective barriers. Further, he attacked several officers, including the particularly brutal attack on D.H. Mackrell used the power of the mob to propel him forward while he used his hands pull at a USCP officer's gas mask during a time when chemical irritants were being deployed, and he did all this while his own gas mask and goggles were intact and covering his eyes and face.

18

At no point has Mackrell taken responsibility for his actions on January 6.   Instead, in the immediate aftermath of the horrible events of that day, he actually bragged to Facebook friends about how he and the other rioters had sent a "message." This lack of remorse combined with the Mackrell's violent acts that day supports the government's recommendation, which falls at the mid-point of the guideline range.

The nature and circumstances of Mackrell's offenses were of the utmost seriousness, and fully support the government's recommended sentence of 27 months' incarceration.

**B.  Mackrell's History and Characteristics**

Mackrell is 23-year-old high school graduate with a spotty employment record and no criminal record. Despite his lack of a criminal history, Mackrell's criminal history, his criminal conduct on January 6, 2021 took place over the course of hours, not minutes, and consisted of multiple assaults against police officers, indicating that it was not a momentary lapse in judgment but a series of terrible, purposeful decisions with violent consequences. Further, at no point has Mackrell taken responsibility for his actions on January 6, instead, in the immediate aftermath of the horrible events of that day, he actually bragged to Facebook friends about how he and the other rioters had sent a "message." This lack of remorse combined with the Mackrell's violent acts that day supports the government's recommendation, which falls at the mid-point of the guideline range.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Mackrell assaulted officers in the midst of a riot and attack on the U.S. Capitol Building and grounds. His actions on January 6, 2021 were the epitome of disrespect for the law. See *United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[6] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Mackrell's actions on January 6 were deliberate and dangerous. He assaulted several officers and then told others in the crowd, "I'm not

---

[6] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

done … I'm going back in." Mackrell's criminal conduct on January 6, 2021 was intentional and he showed no remorse for his actions. He came dressed for battle and was determined to use physical force and violence against the police. The government's recommended sentence is the minimum sentence sufficient to specifically deter Mackrell should he become dissatisfied with the outcomes of future elections.

### E.      The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.      Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully

review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Daniel Leyden*, 21-cr-314 (TNM), Sent. Hrg. Tr. at 38 ("I think the government rightly points out generally the best way to avoid unwarranted sentencing disparities is to follow the guidelines.") (statement of Judge McFadden); *United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the

offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[7]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[8]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating

---

[7] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[8] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Kevin Creek*, 21-cr-645 (DLF), the mob, including Creek, pushed through the reconstituted barrier, breaking the line of bike-rack fencing and the police officers behind it. Creek ran through the front of the crowd, grabbed an MPD officer and drove him backward forcefully several feet through the West Plaza. After letting go of the officer, Creek hit him in the face shield of his helmet. Creek then made a beeline for a USCP officer who was attempting to protect himself behind a bike rack barrier and a police shield. Creek went around the bike rack barrier, gave the USCP officer a hard shove in the shoulders, and then kicked him, causing the officer to fall backward to the ground. After backing away from the USCP officer, Creek picked up what looks like a ratchet strap—a thick strap with heavy metal buckles—from the ground and threw it in the direction of officers. Like Mackrell, Creek was convicted of violating 18 U.S.C. § 111(a)(1), with the facts of both cases being almost identical. The Court sentenced Creek to 27 months of incarceration.

In *United States v. Ricky C. Willden,* 21-cr-423 (RC), Willden bypassed barricades and police lines to make his way past police officers to the Memorial Doors, he joined the mob who surrounded police officers at the Memorial Doors and sprayed several officers with a chemical irritant, he continued into the Rotunda and remained there for 15 minutes, and he later celebrated his attack on police on Facebook. Like Willden, Mackrell committed assaults on officers outside the building and was convicted of violating 18 U.S.C. § 111(a)(1). Unlike Willden, Mackrell,

despite his multiple violent efforts to get inside the building, never made it there. For his actions, the court sentenced Willden to 24 months' incarceration.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[9]  Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Mackrell must pay $2,000 in restitution, which reflects in part the role Mackrell played in the riot on January 6.[10]  Plea Agreement at ¶ 11. As the plea agreement

---

[9]  The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[10]  Unlike under the Sentencing Guidelines for which (as noted above) the government does not

reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Mackrell's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 110.

## VIII.   CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 27 months of incarceration, 36 months of supervised release, $2,000 in restitution, and a special assessment of $100.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:   /s/ *Elizabeth N. Eriksen*
Elizabeth N. Eriksen
VA Bar No. 72399
Trial Attorney, Detailee
601 D Street, N.W.
Washington, D.C. 20001
(202) 616-4385
elizabeth.eriksen2@usdoj.gov

---

qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

/s/ *Nialah S. Ferrer*
Nialah S. Ferrer
Assistant United States Attorney
New York Bar No. 5748462
United States Attorney's Office
District of Columbia
(202) 557-1490
nialah.ferrer@usdoj.gov